IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

CURTIS LAMB,

      Plaintiff,

v.                                     CASE NO. 1:15-cv-221-MP-GRJ

CAROLYN W. COLVIN,
Commissioner of Social Security,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the

Commissioner of Social Security (the "Commissioner") denying Plaintiff's

application for Supplemental Security Income (SSI) pursuant to Title XVI of

the Social Security Act (the Act).  ECF No. 1.  The Commissioner has

answered, and both parties have filed briefs outlining their respective

positions.  ECF Nos. 20, 21.  For the reasons discussed below, the

undersigned recommends that the Commissioner's decision be

**REVERSED AND REMANDED** pursuant to the fourth sentence of 42

U.S.C. § 405(g).

## I.  PROCEDURAL HISTORY

Plaintiff protectively filed an application for SSI benefits on February

28, 2012, alleging disability beginning January 10, 2012, due to a seizure disorder, mental health problems, and anger problems.  R. 18, 187-96, 220.  His claim was denied initially and upon reconsideration.  At Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ"), on February 14, 2014, at which Plaintiff and a vocational expert (VE) testified.  R. 35-58.  The ALJ issued an unfavorable decision on May 2, 2014, and on August 14, 2015, the Appeals Council denied review.  R.  1-3, 18-29.

This appeal followed.  The issue presented is whether substantial evidence supports the ALJ's determination that Plaintiff retained the residual functional capacity for light work.  ECF No. 20.

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

---

[1] *See* 42 U.S.C. § 405(g) (2000).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389,

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4]  However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental

---

401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, he is not disabled.[9]  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10]  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix

---

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 20016 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

1, he is disabled.[11]  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[12]  Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14]  The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15]  The

---

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); see also Doughty v. Apfel, 245 F.
3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[17]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19]  Such

---

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). *See* Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

independent evidence may be introduced by a Vocational Expert's ("VE")
testimony, but this is not the exclusive means of introducing such
evidence.[20]  Only after the Commissioner meets this burden does the
burden shift back to the claimant to show that he or she is not capable of
performing the "other work" as set forth by the Commissioner.

### III.  SUMMARY OF THE RECORD

#### A. Findings of the ALJ

The ALJ determined that Plaintiff has the severe impairments of
epilepsy seizure disorder and mood disorder.  Plaintiff does not have an
impairment or combination of impairments that meets or equals the listings.
In assessing the severity of Plaintiff's mental impairments, the ALJ
considered the "paragraph B" criteria and found that Plaintiff has mild
restriction in activities of daily living, moderate difficulties in social function,
moderate difficulties in concentration, persistence, or pace, and no
episodes of decompensation.  The ALJ found that the "paragraph C"
criteria were not satisfied.

Based on the limitations determined by the ALJ, the ALJ concluded

---

[20] *See id.*

that Plaintiff has the RFC to perform light work with the limitations that he can: Lift, carry, push and pull up to 20 pounds frequently and 50 pounds occasionally; sit eight and stand two hours in a workday, but only for 30 minutes uninterrupted; walk three hours, but only one hour uninterrupted; no more than frequent use of hands and feet; occasional bending, stooping, crawling, crouching, kneeling, and climbing stairs; no climbing ladders, ropes, and scaffolds; no driving motorized vehicles; avoid unprotected heights, dangerous machinery, and moving mechanical parts; avoid exposure to fumes and extremes in temperatures and humidity; only "office level" noise; simple, unskilled, repetitive, routine tasks; and only brief and superficial contact with the public and co-workers.  R. 21-22.

Relying on the testimony of a VE, the ALJ found that a person with Plaintiff's age, education, work experience, and RFC, would be able to perform various unskilled jobs at the light exertional level that exist in substantial numbers in the national economy, such as: Office helper, assembler, plastic hospital products; and assembler, small products.  The ALJ therefore found that Plaintiff was not disabled.  R. 28-30.

## B. *Medical Evidence*

Plaintiff's appeal focuses on the opinion of a consultative examiner, Dr. Dennis D. Dewey, M.D., a specialist in neurology, who completed an assessment indicating that Plaintiff could not sort, handle, or use paper files. *See* ECF No. 20-22. Plaintiff also refers to a medical source statement from treating physician Robert Panzer, D.O., regarding Plaintiff's mental RFC, but Plaintiff makes no specific arguments regarding Dr. Panzer's statement. *Id*. at 18-21.

As the ALJ explained, Plaintiff's medical records are significant for consistent diagnoses of seizure disorder and mood disorder since his alleged onset date. R. 22. Plaintiff has taken medication for seizures since he was a child. *Id.*

In January 2012, Plaintiff was taken to Shands emergency department following a single car collision. Plaintiff underwent physical examinations and examination for "altered mental status" based on his statements that he heard voices and God told him to crash his car. The physical examinations did not reflect abnormalities. Following his discharge from Shands, Plaintiff was transferred to Meridian Behavioral

Healthcare to undergo further evaluation.  Plaintiff was treated for approximately five days, during which he reported that his accident was caused by a seizure while driving and that he had been off of his seizure medication for three days prior to the accident.  Plaintiff was discharged from Meridian with follow-up consisting of medication management.  R. 329-74, 375-87, 439-45.

The ALJ found that Plaintiff's medical records did not contain objective lab data or positive clinical findings to suggest that Plaintiff's impairments are disabling.  R. 23.  Records from Plaintiff's primary care physician, Dr. Robert Panzer, D.O. and his treating neurologist, Dr. Jose A. Gaudier, M.D., reflect generally manageable medical conditions with proper monitoring, treatment, and compliance.  R. 439-42, 443-45.   Both Dr. Panzer and Dr. Gaudier noted normal findings on general physical examination.  *Id.*  Following his evaluation of Plaintiff in September 2013, Dr. Gaudier continued Plaintiff on Tegretol and assessed partial complex seizures with secondary generalization.  Dr. Gaudier advised Plaintiff regarding seizure precautions, including not swimming alone, avoiding activities during which a seizure could cause harm to himself or others,

avoiding alcohol and sleep deprivation, and avoiding driving until he was six months seizure free, in accordance with Florida law.  Dr. Gaudier noted that Plaintiff experienced 2 nocturnal seizures per month and appeared to have some "mild" developmental delay.  R. 443-45.

Plaintiff received additional voluntary outpatient care at Meridian in April 2012.  Plaintiff's mental status examination was essentially normal and he was assigned a GAF of 60.  Further treatment was recommended only for management of Plaintiff's seizure disorder.  R. 388-96, 407-13.

Dr. Janet Humphreys, Ph.D., performed a consultative psychological examination in June 2012.  Her notes recount Plaintiff's history of seizures and seizure-related symptoms including difficulty sleeping and inability to find work.  Plaintiff reported, however, that he is able to independently care for himself and sometimes performs yard work for pay.  Dr. Humphreys noted that Plaintiff had a mildly anxious mood; logical, goal oriented thought processes; good judgment and insight; intact memory; and ability to perform simple calculations.  Her diagnostic impression was mood disorder.  She opined that Plaintiff's concentration appeared "somewhat impaired," that his memory was grossly intact, and that his social skills and

judgment, and ability to perform simple repetitive tasks, may be affected by his mood disorder and seizure disorder.  R. 399-403.  The ALJ accorded significant weight to Dr. Humphreys' opinion because it reflected an accurate summary of the record as a whole.  R. 26-27.

Dr. Dewey performed a consultative examination in December 2013. R. 430-38.  Dr. Dewey noted Plaintiff's history of seizures, most occurring nocturnally.  His examination findings noted that Plaintiff had normal gait and station, good memory, appropriate attentiveness to questions, he followed directions, had normal use of vocabulary, and his neurological examination was within normal limits.  R. 438.  Dr. Dewey completed a physical assessment of Plaintiff's abilities which are generally consistent with a conclusion that he could perform light work.  However, Dr. Dewey also opined that Plaintiff could not travel without a companion due to the risk of seizure and could not "sort, handle, or use paper/files."  This latter restriction is accompanied by Dr. Dewey's notation that Plaintiff "probably needs assistance with finances."  R. 436.  He also noted that Plaintiff is unable to drive.  *Id*.

In March 2014, Dr. Panzer completed a mental RFC assessment

checklist opining that Plaintiff had marked to extreme limitations in his ability to: set realistic goals; accept instructions and respond appropriately to criticism; work in coordination with others without distraction; complete a normal workday without interruption from psychological symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and maintain attention and concentration for extended periods.  R. 446-48.  The ALJ found that Dr. Panzer's opinion was entitled to no weight because it was unsupported by objective medical evidence, including Dr. Panzer's own treatment notes.  The ALJ noted that Dr. Panzer's checklist was also inconsistent with Dr. Humphreys' MSE findings as well as the Meridian evaluations, which reflect no more than moderate limitations.  R. 26.

Non-examining medical consultant Dr. Minal Krishnamurthy reviewed Plaintiff's records in July 2012 and found that Plaintiff had no exertional limitations but should avoid climbing and exposure to work hazards.  R. 81-92.  The ALJ found that Plaintiff was more limited than Dr. Krishnamurthy's opinion, but otherwise accorded the opinion considerable weight.  R. 27.

Non-examining psychological consultant Jill Rowan, Ph.D., reviewed

Plaintiff's records in June 2012 and opined that Plaintiff had no more than mild limitations in activities of daily living, moderate limitations in social functioning, and moderate limitations in concentration, persistence, and pace.  R. 81-92.   The ALJ accorded this opinion great weight because it reflected an accurate summary of the relevant evidence.  R. 27.

### C.  *Hearing Testimony*

Plaintiff was 28 years old at the time of the hearing.  He testified that he completed the eleventh grade, attending exceptional student classes. Plaintiff testified that he last worked at age 21 or 22 as a grocery stocker. Prior to that, Plaintiff performed some yard work.

Plaintiff testified that he experiences three to four nighttime seizures a month.  He had daytime seizures when he was younger.  He testified that stress can trigger seizures.   During seizures, Plaintiff can bruise himself and bite the inside of his mouth.  Following a seizure, Plaintiff does nothing during the day to make sure that he is okay to go out in public.  He is somewhat tired.

Plaintiff, who was homeless at the time of the hearing and usually slept in his car, testified that he socializes with two friends and is always at

their house.  On a typical day, he tries to do yard work for people.  He

testified that he is probably able to do yard work the day after a seizure,

but he does not so that he does not risk something happening.

Plaintiff testified that he does not have a drivers' license because it

was suspended due to lack of insurance.  Plaintiff could not recall the last

time he drove.  When he does yard work, he walks around the

neighborhood.  R. 37-50.

The ALJ posed a hypothetical to the VE that assumed an individual

of Plaintiff's age and education, with effectively no work background, and

the RFC for light work, with additional exertional and nonexertional

limitations, as summarized above in the hearing decision.  The VE testified

that the person could perform the jobs of office helper, assembler of plastic

products, and assembler of small products.  R. 51-52.

Plaintiff's counsel then referred to Dr. Dewey's assessment in which

he opined that Plaintiff could not "sort, handle, or use paper/files."  R. 436.

The ALJ interjected that he was unsure what the opinion was based on.

Counsel responded that it was a combination of "neurological deficits as

well as the intellectual ability."  The ALJ then stated: "I don't like it.  He

doesn't find that [Plaintiff] is intellectually deficient in his report . . . . He doesn't find any visual problem . . . . I just don't know where this is coming from. . . . [T]he memory testing was basically normal.  Normal use of vocabulary . . . . I just don't see the basis for that limitation."  The ALJ, however, permitted counsel to proceed with the questioning.  R. 53-54.

The VE testified that if the individual could not handle paper or files, then he could not be an office helper, but if the individual had no ability to sort or handle anything he would be unable to do any unskilled job.  R. 54.

The ALJ then pointed out that Dr. Dewey's finding was inconsistent with the immediately preceding finding that Plaintiff could prepare a simple meal and feed himself.  In looking at the form as a whole, and in light of Dr. Dewey's handwritten notation that Plaintiff "probably needs assistance with finances," the ALJ stated that he believed the limitation was directed to Plaintiff's ability to handle numbers, figures, and make decisions rather than physically handling paper.  R. 55.

Plaintiff's counsel then referenced Dr. Dewey's finding that Plaintiff could not travel without a companion.  The ALJ stated that he believed that referred to driving, because Dr. Dewey also found that Plaintiff could shop

which meant that he was able to walk, and Dr. Dewey found that Plaintiff could "walk a block at a reasonable pace on rough or uneven surfaces." The ALJ concluded that "[Dr. Dewey] is not saying the gentleman is unable to move around.  I think when he talks about traveling he must be referring to – to driving."  R. 55-56.   Plaintiff's counsel contended that based on the residual effect of Plaintiff's seizures, he was limited to less than sedentary work and was unable to maintain employment.  R. 56.

## IV. DISCUSSION

Plaintiff contends that the ALJ's finding that he is capable of light work is contrary to the substantial evidence of record.  Plaintiff asserts that the substantial evidence "includes a medical source form completed by [Dr. Dewey], a mental [RFC] evaluation completed by [Dr. Panzer], and testimony by a vocational expert."  ECF No. 20 at 18-19.  Plaintiff specifically points to Dr. Dewey's assessment that Plaintiff cannot travel without a companion for assistance and is unable to sort, handle, or use paper/files.  *Id*. at 20.  Plaintiff argues that the VE's testimony, in light of these limitations, provides substantial evidence that Plaintiff is not capable of light work.  *Id*. at 21.

Although Plaintiff does not specifically frame his argument as a
challenge to the ALJ's weighting of the medical opinion evidence, the
record in this case reflects that the ALJ failed to explain in the decision
denying benefits what weight was afforded to Dr. Dewey's consultative
examining opinion.   While there is no requirement for the ALJ to discuss
every medical record in the administrative record, he is "required to state
with particularity the weight he gave the different medical opinions and the
reasons therefor."[21]   Additionally, because an ALJ is not permitted to
substitute his judgment for that of the medical experts,[22] the ALJ cannot
reject portions of a medical opinion without providing an explanation for
such a decision.[23]   Where an ALJ fails to sufficiently explain how he
reached his decision, the Court may not speculate.[24]   Thus, while the
opinion of a consultative examiner, unlike the opinion of a treating

---

[21] Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990)(noting "the ALJ should
state the weight he accords to each item of impairment evidence and the reasons for
his decision to accept or reject that evidence").

[22] Graham v. Bowen, 786 F.2d 1113, 1115 (11th Cir. 1986); Freeman v.
Schweiker, 681 F.2d 727, 731 (11th Cir. 1982).

[23] Morrison v. Barnhart, 278 F. Supp. 2d 1331, 1337 (M.D. Fla. 2003).

[24] Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984).

physician, is not entitled to any special weight or deference, *see McSwain v. Bowen*, 814 F.2d 617,  619 (11th Cir. 1987), the ALJ must articulate the weight given to the opinion and the reasons why.

Here, the ALJ discussed Dr. Dewey's opinion during the hearing and articulated several reasons why that opinion might be afforded little or no weight.  *See* R. 53-56.  The ALJ indicated that he would consider counsel's argument as to why the opinion supported a finding that Plaintiff was disabled.  R. 56.  The final decision denying benefits, however, does not reflect the ALJ's reasoning with regard to Dr. Dewey's opinion.  While it can be inferred from the record that the ALJ afforded the opinion no weight, in the absence of any explanation the Court will not engage in speculation.

Plaintiff does not make specific arguments regarding the ALJ's treatment of Dr. Panzer's opinion, which was afforded no weight.  To determine the weight to be accorded a treating physician's opinion, the ALJ must consider the factors set forth in 20 C.F.R. § 404.1527(d), which include the length of treatment, frequency of examination, nature and extent of the treatment relationship, support of opinion afforded by medical

evidence, consistency of opinion with the records as a whole, and specialization of the treating physician.  The record in this case reflects that the ALJ sufficiently considered these factors in determining that the opinion was unsupported by the objective medical evidence, including Dr. Panzer's own treatment notes.  *See* R. 26.

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **REVERSED AND REMANDED** under sentence four of 42 U.S.C. § 405(g) to the Commissioner so that the Administrative Law Judge may conduct further proceedings consistent with this Report and Recommendation.

**DONE AND ORDERED** this 31st day of October 2016.

*s / Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.